UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AARON P.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 22-cv-6254 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| MARTIN J. O'MALLEY, Commissioner | ) | |
| of the Social Security Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |

### AMENDED MEMORANDUM OPINION AND ORDER

This amended decision is issued following a motion [Dkt. 26] by the Commissioner of the Social Security Administration ("Commissioner") to alter or amend the Court's April 11, 2024 decision remanding this matter [Dkt. 24]. Concurrent with the instant Amended Memorandum Opinion and Order, the Court has issued its Order granting the Commissioner's motion to alter or amend and detailing its reasons for the same. The Court's amended decision follows:

Plaintiff Aaron P. appeals the decision of the Commissioner denying his applications for disability benefits. The parties have filed cross motions for summary judgment.[3] As detailed below, Plaintiff's motion for summary judgment [Dkt. 14] is DENIED and Defendant's motion for summary judgment [Dkt. 17] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**1.    SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW**

The Social Security Act requires all applicants to prove they are disabled as of their date last

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2]    On December 23, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration; pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted as the proper defendant for this action.

[3]    The Court construes "Plaintiff's Brief in Support of his Motion for Summary Judgment" [Dkt. 14] as a motion for summary judgment.

insured to be eligible for benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). In these cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the Administrative Law Judge's ("ALJ") judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). While substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quotation marks omitted) (quoting *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion. *Hess*, 92 F.4th at 676. Yet an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal signals and citations omitted). Additionally, "[w]hen reviewing a disability decision for substantial evidence, [the Court] will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell*, 97 F.4th at 1052-53. Finally, as to this Court's

obligations, "[a] district (or magistrate) judge need only supply the parties…with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

## 2. BACKGROUND

### 2.1 Procedural History

At some point in 2019 (the parties do not say when), Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [*See* Administrative Record ("R.") 113.] On April 28, 2021, an ALJ denied Plaintiff's 2019 applications for disability benefits. [R. 113-29.] That denial was affirmed by the Appeals Council ("AC") on July 12, 2021. [R. 136-40.] It does not appear Plaintiff pursued federal court action related to the denials of his 2019 applications for disability.[4]

In September 2021, Plaintiff filed new applications for DIB and SSI. [*See* R. 296-310; 316-26.] Plaintiff alleges disability beginning August 20, 2021.[5] [R. 327-28 (form amending onset date).] Plaintiff's applications were denied initially and upon reconsideration. [R. 18.] Plaintiff appealed the denial and appeared telephonically at a July 14, 2022 Administrative Hearing before ALJ Gregory Smith. [R. 82-109.] On August 9, 2022, ALJ Smith issued a decision denying Plaintiff disability benefits. [R. 18-30.] Plaintiff requested and was denied Appeals Council review [R. 1-6], rendering the Decision of the Appeals Council the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). It is ALJ Smith's August 9, 2022 decision Plaintiff challenges.

---

[4] The parties are silent about this earlier denial of disability benefits, as is the ALJ's decision at issue currently.

[5] The ALJ's decision lists different application dates and a different alleged onset date from what is reflected in the Administrative Record. [R. 18.] The Court has used the dates reflected in the Record. No party has raised this as an issue with the ALJ's decision and, to the extent it was one, that issue has been waived. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020) (arguments not raised in district court are waived); *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (arguments not raised in party's opening brief are waived). The Court does not believe this is an outcome determinative issue.

### 2.2 The ALJ's Decision

The ALJ's August 9, 2022 decision followed the familiar five-step sequential process for determining disability. [R. 18-30.] At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. [R. 20.] At Step 2, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the lumbar and cervical spine; peripheral neuropathy; and scrotal varices and left epididymal cyst status post removal. *Id*. The ALJ determined Plaintiff's obesity was non-severe and that his "mental limitations have not met the durational requirements." [R. 21.] Additionally, the ALJ noted that "[t]he available evidence supports a finding that any other condition not specifically mentioned in this decision, but which may be mentioned in the record, is not considered severe." [R. 22.] At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 22-23.] Before Step 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[6] to perform sedentary work with the following limitations: "frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop and crouch; no work at unprotected heights; and occasional work with moving mechanical parts. [R. 23.] The ALJ also limited Plaintiff to work that "include[s] the need to use a cane for walking and balance." *Id*. At Step 4, the ALJ found Plaintiff unable to perform any of his past relevant work. [R. 28.] At Step 5, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff would be able to perform. [R. 29-30.] Accordingly, the ALJ found Plaintiff not disabled under the Act at any time from his alleged onset date through the date of the ALJ's decision. [R. 30.]

---

[6] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

3.  **DISCUSSION**

Plaintiff contends the ALJ's August 9, 2022 decision requires remand because (1) the ALJ allegedly failed to account for Plaintiff's physical limitations in sitting and in stooping (2) the ALJ allegedly improperly assessed Plaintiff's subjective symptoms; and (3) the ALJ allegedly improperly assessed the opinion of examining physician, Christen Tibbs, M.D. [Dkt. 14.]

3.1  **The ALJ Properly Accounted for Plaintiff's Physical Limitations**

While Plaintiff argues the ALJ failed to adequately account for evidence warranting a sitting limitation in his RFC assessment, the Commissioner counters that the ALJ's finding that Plaintiff could sit sufficiently to perform sedentary work (with no specific sitting limitation) was sufficiently grounded in record evidence. Similarly, Plaintiff contends the ALJ ignored evidence which supported an inability to stoop, but the Commissioner avers that a single finding of reduced flexion does not equate to a finding that Plaintiff cannot stoop commensurate with the RFC here. The Court agrees with the Commissioner that the ALJ's analysis and subsequent RFC are supported by substantial evidence as it relates to Plaintiff's sitting and stooping abilities. The Court therefore cannot remand on either of these bases.

The Court must begin by noting that the ALJ alone is responsible for determining a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1546(c). While medical source opinions are considered, the final responsibility for deciding the RFC is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). In this case, the Court does not agree, as Plaintiff asserts, that the ALJ crafted the RFC and then worked backwards to justify how Plaintiff's allegations supported that RFC. Rather, as detailed below, the Court finds the ALJ provided a thorough, reasonable assessment of Plaintiff's statements based on numerous, appropriate relevant regulatory factors. The ALJ's quite restrictive RFC ultimately reflects he largely credited, rather than rejected, Plaintiff's subjective statements, while reasonably discounting

5

Plaintiff's more extreme assertions considering the regulatory factors. [R. 23 (delineating Plaintiff's RFC), 25 ("This [RFC] gives consideration to the claimant's subjective complaints to the extent these may be consistent with the evidence now available at the hearing level.")].

### 3.1(a)  The ALJ's Sitting Limitation is Supported by Substantial Evidence

After an assessment of Plaintiff's sitting abilities, the ALJ crafted an RFC limiting Plaintiff to sedentary work with no additional specific sitting postural limitations. The ALJ explained the factors that went into that formulation, grounding his findings in objective evidence, including a June 2021 electromyogram of Plaintiff's legs, which was normal per the interpreting doctor. [R. 25 (citing R. 454).] Clinical examination findings also supported the lack of sitting limitations within the RFC. For example, examining physician Dr. Tibbs's findings of full (5 of 5) strength in the legs, normal reflexes, intact sensation, normal hip range of motion save for 70 degrees of flexion, only mild tenderness over the lumbar spine, and no muscle spasms or atrophy. [R. 26 (citing R. 669-71).] Although Dr. Tibbs observed reduced low-back range of motion, severe difficulty squatting/arising, and moderate difficulty heel- and toe-walking, he also noted Plaintiff had no difficulty getting on and off the examination table. [*Id*. (citing R. 669-71).] In June 2021, neurosurgeon Paramita Das, M.D. observed abnormal gait but otherwise noted normal findings including full strength in the legs; Dr. Das concluded there was no clear neurologic cause for Plaintiff's abnormal gait or complaints of back and groin pain. [R. 25 (citing R. 452).] Additionally, at four in-person visits between September 2020 and January 2022, Plaintiff's primary care physician Jerome Buster, M.D. observed few abnormal findings, and none that specifically reflected an inability to sit. For instance, although straight leg raise testing was positive in September 2020, Plaintiff's range of motion was normal in all joints and his pain was localized to the right lower back. [*Id*. (citing R. 636).] Similarly, in August 2021, Dr. Buster observed unsteady gait and limping, but he made no other abnormal findings and noted Plaintiff was in no acute distress. [*Id*. (citing AR 654).] Likewise, in January 2022, the only

abnormal finding was unsteady gait, which Dr. Buster identified as a "new problem." [R. 26 (citing R. 665-66).]

Relatedly, and importantly, Plaintiff's complaints at those visits did not reflect any significant trouble sitting. For instance, in April 2021, Plaintiff reported penile discharge and testicular pain. [R. 25 (citing R. 644).] In August 2021 and January 2022 his complaints were focused on left leg pain and testicular swelling, rather than on difficulty sitting; he even specifically denied back pain in January 2022. [R 25, 653, 655, 663-64.] Although the ALJ overlooked that Plaintiff said in September 2020 his back pain was worse when bending from the waist, this was an isolated complaint and did not mention sitting. [R. 634.]

Also supporting the ALJ's findings about Plaintiff's sitting abilities were the prior administrative medical findings of reviewing physicians Drs. Peterson and Western. In February 2022, Dr. Peterson concluded that Plaintiff, in an eight-hour workday, had the capacity to sit about six hours; stand and/or walk about six hours; and lift and carry ten pounds frequently and twenty pounds occasionally; frequently stoop and crouch; and climb, balance, kneel, and crawl all without limitation. [R. 146.] Dr. Western reached the identical conclusions in March 2022. [R. 168-69.] The ALJ found their conclusions about light exertion (*i.e.*, their findings about Plaintiff's lifting/carrying and standing/walking capacity) unpersuasive, because the totality of the evidence including the hearing-level evidence better supported a finding limiting Plaintiff to sedentary work with additional nonexertional restrictions. [R. 28.]; s*ee* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (the less consistent an opinion or prior administrative medical finding is with the evidence, the less persuasive it will be).[7] However, the ALJ adopted their conclusions about Plaintiff's sitting, stooping, and

---

[7] The regulations governing the determination of disability for DIB purposes are found at 20 C.F.R. § 404.1501 *et seq*. The SSI regulations are substantially identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq*. Therefore, although Plaintiff filed applications for both DIB and SSI, the Court will cite only the DIB regulations unless otherwise noted.

crouching abilities. Thus, the ALJ confronted both the 45 degrees of flexion noted by Dr. Tibbs and the opinion of frequent stooping posited by Drs. Peterson and Western. That the ALJ did not specifically state that his findings of six hours sitting was tied to the prior administrative medical findings is not error, because the court reads the ALJ's decision as a whole, *McCorkle v. Kijakazi*, 2023 WL 179983, at *3 (7th Cir. Jan. 13, 2023) (citing *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)), and a fair reading of his decision shows he relied on their conclusions in reaching those findings. Moreover, the Seventh Circuit recently confirmed that an ALJ may rely on prior administrative medical findings as well as later-submitted treatment records in assessing RFC as long as he does not "interpret[] results of 'highly complex' medical tests on his own." *Durham v. Kijakazi*, 53 F.4th 1089, 1094-95 (7th Cir. 2022). The ALJ conformed to Seventh Circuit precedent in this respect.

In addition to the objective evidence and the opinion evidence, the ALJ explained how he weighed the other record evidence supporting his conclusions about Plaintiff's sitting abilities. The ALJ considered Plaintiff's treatment and medications and their effectiveness, Plaintiff's activities, and other regulatory factors. The ALJ also noted that Plaintiff reported an inability to sit for longer than 30 minutes, but also noted his testimony that after completing chores he "may need to sit down" and that "he needs to sit down to do dishes." [R. 24.] The ALJ specifically noted he based Plaintiff's RFC "on all of the relevant evidence." 20 C.F.R § 404.1545(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5.

Plaintiff complains the ALJ ignored his testimony that he had difficulty sitting, and that the pain in his testicles was increased by sitting too long. [Dkt. 14, p. 4 (citing R. 96, 377).] Plaintiff cited a handful of examples of testicular pain complaints, but none that specifically mentioned problems sitting. [Dkt. 14, p. 4.] Plaintiff notes that he told the consultative examiner in 2022 "[h]e tried working as an Uber driver, however states he was unable to sit for prolonged periods of time…"

8

[R. 667.] Yet the Administrative Record also reflects Plaintiff's October 2020 testimony that he was "trying to do Uber [a couple of years prior][8]…and it was just causing too many problems with [his] family…" [R. 54] and Plaintiff's 2019 report to a consultative examiner that he quit Uber due to back pain (not testicle pain) [R. 435-36]. This scant evidence does not, in the Court's mind, disconnect the ALJ's logical bridge concerning the lack of a sitting limitation within the RFC. Moreover, the ALJ was not required to confront every piece of evidence, as Plaintiff seemingly urges the Court to do. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) ("an ALJ need not discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence") (signals and citations omitted; cleaned up; emphasis added).

The Court finds the ALJ more than met his duty to "'minimally articulate' h[is] reasoning so as to build an accurate and logical bridge from the evidence to h[is] conclusions" concerning Plaintiff's sitting abilities. *Shaw v. Kijakazi*, No. 20-cv-3121, 2022 WL 45030, at *3 (N.D. Ill. Jan. 5, 2022) (quoting *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)); *see also Rick M. v. Saul*, No. 20-cv-4369, 2021 WL 2588762, at *6 (N.D. Ill. June 24, 2021) ("the ALJ offered specific reasons—contrary evidence—that explain why [the] medical record did not support incorporating any mental limitations into the RFC [which] was enough to build the necessary 'accurate and logical bridge' between" the evidence and the findings) (citation omitted). Therefore, the Court has been able to easily and meaningfully assess the reasons underpinning the ALJ's decision in this regard. *Warnell*, 97 F.4th at 1054; *Morales*, 103 F.4th at 471. The Court will not overturn the ALJ's decision based on his analysis of Plaintiff's sitting limitations.

### 3.1(b) The ALJ Properly Considered Plaintiff's Stooping Abilities

After a review of all the evidence, the RFC the ALJ crafted limited Plaintiff to jobs requiring

---

[8] It appears Plaintiff drove for Uber from May 2018 through December 2018. [R. 354-55, 359.]

no more than frequent stooping. [R. 23.] The ALJ explained the factors that went into this formulation, grounding his findings in objective evidence, including, *inter alia*, Dr. Tibbs's findings of normal hip range of motion (save for 70 degrees of flexion), and his later findings of reduced low-back range of motion, including 45 degrees of flexion. [R. 26 (citing R. 669-71).] Dr. Tibbs noted two lumbar flexion measurements: 45 out of 60 degrees and 45 out of 90 degrees. [R. 671.] The first measurement reflected "true flexion without element of hip flexion as measured by [an] inclinometer" and the second measurement "includes some element of hip flexion as measured visually or by goniometer." [*See* R. 439.] Thus, the true flexion was 45 out of 60 degrees, which the ALJ, adopting the language of Dr. Tibbs, described as "mildly restricted." [R. 26, 669.]

Additionally, except for a single complaint about back pain while bending from the waist in September 2020, Plaintiff did not complain to his physicians of trouble stooping during any of his four in-person visits between September 2020 and January 2022. [R 25, 634, 644, 653, 655, 663-64.] The prior administrative medical findings of Drs. Peterson and Western likewise supported the ALJ's determinations about Plaintiff's stooping capacity, in that they both concluded Plaintiff could frequently stoop in an eight-hour workday.[9] [R. 146, 168-69.] A fair reading of the ALJ's decision shows the ALJ adopted their conclusions about Plaintiff's stooping abilities.[10] *See Durham*, 53 F.4th at 1094-95.

It was Plaintiff's burden to establish not just the existence of a stooping limitation, but to provide evidence this condition caused specific limitations affecting his capacity to work. *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018); *see also* 20 C.F.R. § 404.1512(a). Although

---

[9] This was so despite both physicians having reviewed Dr. Tibbs's examination findings, including the 45 degrees of low-back flexion.

[10] Specifically, the pertinent portion of ALJ's opinion reads as follows: "[t]he State agency's medical consultants…opined that [Plaintiff] would be limited to the light exertional level with frequent stooping and crouching. The undersigned finds that the hearing level evidence better supports a sedentary exertional level along with the additional limitations in his residual functional capacity." [R. 28.]

10

Plaintiff contends he cannot stoop, he cites only one piece of evidence in support of this proposition: the 45 degrees of low-back flexion noted by Dr. Tibbs. [Dkt. 14, p. 6 (citing R. 761).] Plaintiff argues that 45 degrees of lumbar flexion "is inconsistent with the ability to stoop." [Dkt. 14, p. 6.] But flexion of the back *is* stooping, as the reviewing physicians noted. [R 159, 168 (referencing "[s]tooping (*i.e.*, bending at the waist)"). And a raw medical finding such as 45 degrees of flexion does not establish any functional limitations on frequency of stooping. *Weaver*, 746 F. App'x at 578-79 ("having been diagnosed with these impairments does not mean they imposed particular restrictions on [plaintiff's] ability to work). Rather, such a finding requires a medical expert to decipher or discern the likely effects of such a finding. That is exactly what occurred in this case. Here, the record before Drs. Peterson and Western included that 45 degree flexion finding, along with all the other findings, which they reviewed before they each concluded Plaintiff could, *inter alia*, stoop frequently. Despite being urged by Plaintiff's counsel, the Court cannot play doctor (just as it would have been impermissible for the ALJ to have) by extrapolating raw medical data into a finding that Plaintiff cannot stoop frequently in a work setting. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (ALJs are cautioned not to "play doctor" by making independent medical decisions "without relying on other medical evidence or authority in the record."); *Lopez v. Astrue*, 807 F. Supp. 2d 750, 763 (N.D. Ill. 2011) ("Lawyers are not allowed to play doctor with the record and to make medical determinations about the significance of medical references…"). Crucially (and perhaps tellingly), the ALJ did not find—and no medical finding or opinion suggested—Plaintiff was completely unable to stoop. Plaintiff has simply not established that a stooping limitation caused him any specific functional limitations or diminished work capacity.

Moreover, there is no inherent conflict between an isolated finding of reduced flexion and a finding that a claimant is capable of some stooping. Unlike in *Golembiewski v. Barnhart*, 322 F.3d 912 (7th Cir. 2003), in which a medical record indicated plaintiff had 40 degrees of flexion and no

medical opinion addressed the frequency plaintiff could stoop, here, Drs. Peterson and Western each found Plaintiff capable of frequent stooping (and crouching) even after considering Dr. Tibbs's earlier examination finding of 45 degrees of low-back flexion. [R. 146-47, 168-69.] Thus, this case is akin to *Mueller v. Colvin*, 524 F. App'x 282, 284, 286 (7th Cir. 2013), where the Seventh Circuit found no conflict between occasional stooping and being limited to bending forward only 50 degrees. Central to the *Mueller* court's decision was the fact the reviewing physician specifically relied on the examining physician's finding of 50 degrees of flexion in concluding the claimant could stoop occasionally, which is on all fours with the situation at hand. Thus, it was not improper for the ALJ to have determined Plaintiff capable of no more than frequent stooping.

Next, Plaintiff argues that significant limitations in stooping (which he contends the ALJ should have found) "…would significantly erode the unskilled sedentary occupational base…" [Dkt. 14, p. 6] which, presumably (although this is unsaid) would lead to a fatal lack of nationally available sedentary positions Plaintiff could perform, thus qualifying him as disabled. The Court finds this argument to be a red herring. Here, the ALJ found plaintiff capable of frequent stooping.[11] [R. 23.] Even if the ALJ had found Plaintiff capable of only occasional stooping or crouching (or indeed, even no stooping or crouching) such a finding would not affect the occupational base because the jobs cited by the vocational expert ("VE") do not require *any* stooping or crouching. Although many sedentary jobs require occasional stooping (*see* SSR 96-9p), the Dictionary of Occupational Titles confirms that in each of the three cited occupations, stooping and crouching are "not present."[12] Consequently, the potential vocational impact of a restriction to occasional stooping

---

[11] "Frequent" means occurring from one-third to two-thirds of the time, and "occasional" means occurring from very little up to one-third of the time. SSR 96-9p.

[12] *See generally* U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles*, Contents (4th ed. 1991), 1991 WL 645958; *see also* DOT No. 669.687-014, DOT No. 559.687-014, and DOT No. 732.684-062. Despite how outdated it is, "[n]evertheless, the Social Security Administration continues to treat the DOT as the primary source of job data and takes administrative notice of its contents." *Purdy v. Berryhill*, 887 F.3d 7, 17 n. 10 (1st Cir. 2018) (internal citations and internal quotation marks omitted).

is irrelevant. Nor has Plaintiff shown he was harmed in any way by the ALJ's conclusion regarding his stooping abilities. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("But if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required.").

The Court will not remand based on the ALJ's consideration of Plaintiff's stooping abilities.

### 3.2 The ALJ Properly Assessed Plaintiff's Subjective Statements

The ALJ's findings about the reliability of a plaintiff's testimony and allegations are entitled to deference and should be upheld unless patently wrong. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019). An assessment is patently wrong only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (citations omitted).

In assessing Plaintiff's statements about his own symptoms and limitations, the ALJ considered those statements and then compared those statements with the objective evidence, Plaintiff's treatment history, Plaintiff's improvement with treatment and medication, the reliable opinion evidence, and Plaintiff's daily activities, among other things. [R. 24-28.] The ALJ was entitled to consider each of these factors. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

The objective evidence properly informed the ALJ's assessment of Plaintiff's statements. [R. 24-28]; *see* 20 C.F.R. § 404.1529(c)(2) (objective evidence is "a useful indicator" when assessing subjective statements). The ALJ reasonably found that the objective evidence did not fully resonate with Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms. [R. 24-25.]

Next, the prior administrative medical findings of Drs. Peterson and Western firmly support the ALJ's conclusions about Plaintiff's statements. [R. 28]; *see* 20 C.F.R. § 404.1529(c)(1) ("We

13

also consider the medical opinions…"). In fact, the ALJ found that the evidence as a whole supported even greater limitations than Drs. Peterson and Western posited. The Seventh Circuit has found that an RFC that "was more limiting than that of any state agency doctor or psychologist, illustrat[ed] reasoned consideration given to the evidence [plaintiff] presented." *Burmester*, 920 F.3d at 510.

The ALJ then went beyond the objective and opinion evidence in assessing Plaintiff's statements, further discounting some of Plaintiff's statements based on the stability of Plaintiff's condition after treatment and the conservative nature of that treatment. For instance, the ALJ noted that Plaintiff received a diagnostic spermatic cord block, which relieved his testicular pain. [R. 27 (citing R 687).]; s*ee* 20 C.F.R. § 404.1529(c)(3)(v); *Barrett v. Saul*, 822 F. App'x 493, 497 (7th Cir. 2020) (ALJ properly discounted subjective statements based on records showing claimant was stable after treatment). The ALJ reasonably considered that (a) Plaintiff's overall treatment was rather conservative, consisting mainly of primary (*i.e.*, not specialized) care; and (b) aside from Dr. Das's treatment before the alleged onset date, Plaintiff had not been referred for additional back or spine treatment with a specialist or recommended for back surgery. [R 27.] Agency guidance instructs that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304 at *9. In the same vein, "[t]he Seventh Circuit has held that it is reasonable for an ALJ to consider a claimant's conservative treatment." *Frank J. v. Saul*, No. 19-cv-3176, 2020 WL 6447928, at *9 (N.D. Ill. Nov. 3, 2020).

The ALJ also considered Plaintiff's medication, recognizing Plaintiff's report that his medication helped alleviate his pain but did not help his foot numbness. [R. 27, 92.] The ALJ took that into account in crafting the RFC. [R 27-28]; *see* 20 C.F.R. § 404.1529(c)(3)(iv). This is not a

14

case where the ALJ too heavily relied on medical improvement to conclude Plaintiff could work, but rather a case where the ALJ properly considered the effectiveness of medication as one factor suggesting Plaintiff's symptoms were not as intense or persistent as alleged. *See Green*, 781 F. App'x at 527 (ALJ appropriately considered the effectiveness of treatment where claimant "repeatedly reported improvements in both her fibromyalgia and knee pain.").

Next, the ALJ considered Plaintiff's activities, noting for instance that Plaintiff told Dr. Tibbs he was able to perform all his activities of daily living without assistance. [R. 27 (citing R. 668).] Additionally, Plaintiff's therapist Ms. Newson detailed that Plaintiff was engaging in activities including going to the mall with his teenage daughter, and noted he was able to undergo exercise testing and/or participate in an exercise program and engage in structured activities outside his home. [R. 27 (citing R. 702, 709, 715).] Plaintiff also testified that although his activity level fluctuated based on his pain, he was able to spend time in the forest preserve, perform his household chores, and grocery shop. [R. 27, 95, 97-99, 101-02.] The ALJ considered that Plaintiff's activities suggested he was not *completely unable* to work as alleged. [R. 27.] The ALJ did not equate Plaintiff's ability to perform his daily activities (or his occasional activities) with the ability to work full-time. *See Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) (ALJs must not equate daily activities with the rigorous demands of the workplace, but it is "entirely permissible" to examine this evidence to assess whether testimony about a claimant's impairments was credible or exaggerated) (citations omitted); *Jeske v. Saul*, 955 F.3d 583, 592-93 (7th Cir. 2020) (same). "Plaintiff's daily activities don't show he can work, but in the ALJ's common sense evaluation, they do tend to show his allegations about his symptoms are exaggerated." *Shaun R. v. Saul*, No. 18-cv-4036, 2019 WL 6834664, at *8 (N.D. Ill. Oct. 24, 2019).

Finally, the ALJ considered a few other factors. The ALJ considered Plaintiff's noncompliance with his doctors' recommendations to stop smoking. [R. 27]; *see* 20 C.F.R.

15

§ 404.1529(c)(c)(vii) (other factors). Indeed, in September 2020 and again in April 2021, Plaintiff's primary care physician Dr. Buster recommended that Plaintiff stop smoking, and likewise, in May 2021 neurosurgeon Dr. Das recommended the same specifically because his continued smoking could worsen his degenerative disease of the spine. [R. 25, 456, 636, 647.] An ALJ may properly consider lifestyle choices that exacerbate a claimant's symptoms in making a subjective evaluation. *Thelmarae W. v. Saul*, 476 F. Supp. 3d 717, 727-28 (N.D. Ill. 2020) (ALJ properly discounted statements based on failure to lose weight, continued smoking, and keeping a cat, noting that there were "valid questions" about how severe the claimant's impairments were when there were 'free' things she was told she could do to improve her health."). Moreover, Plaintiff's smoking was not simply an unhealthy risk factor divorced from effect upon his specific ailments, rather it was a risk factor his doctors specifically warned Plaintiff could worsen his very conditions. Likewise, the ALJ considered how Plaintiff was encouraged by his doctors to increase his activity level, reasonably inferring that his physicians believed he was physically capable of doing so. [R. 25, 27 (citing R. 452)]; *see* 20 C.F.R. § 404.1529(c)(c)(vii). "Presumably, the doctor would not have advocated that [plaintiff] be more active if he believed [plaintiff] was not physically capable of doing so." *Roxanne L. v. Berryhill*, No. 18-cv-50059, 2019 WL 2173789, at *6 (N.D. Ill. May 20, 2019). Lastly, the ALJ considered Plaintiff's prescription for a cane and use thereof, although his need for it was "mild" at the consultative examination and he walked 50 feet without it. [R. 25, 26, 27 (citing R. 654, 665, 670, 693)]; *see* 20 C.F.R. § 404.1529(c)(c)(vi) (measures used to relieve pain or other symptoms). Nonetheless, the ALJ accounted for the cane in plaintiff's residual functional capacity. [R. 23, 28.]

Lastly, while Plaintiff suggests the ALJ mischaracterized Dr. Das's conclusions about his pain, this is simply not the case: the ALJ accurately set forth the entirety of Dr. Das's summary, including that Dr. Das was unable to identify the cause of Plaintiff's pain: "Dr. Das assessed there

16

was no clear neurologic cause for the claimant's gait instability and back and groin pain." [R. 25.] The Court does not read the ALJ's later statement that "Dr. Das [] noted that the claimant's EMG and MRI findings did not support the claimant's reported symptoms" [R. 27] to imply that Dr. Das thought there was no basis for Plaintiff's pain. Read as a whole, the ALJ's decision details how Dr. Das acknowledged Plaintiff was in pain, but that Dr. Das was unable to identify any neurologic cause of the pain. The ALJ simply restated the fact the EMG and MRI findings were unable to provide clear support as to the cause of Plaintiff's symptoms, including his pain. The Court finds no mischaracterization here.

In summation, the Court finds the ALJ's assessment of Plaintiff's statements to be well-supported and, in any event, certainly not patently wrong. The Court will not remand the ALJ's decision based on his consideration of Plaintiff's subjective statements.

### 3.3 The ALJ Properly Assessed Dr. Tibbs's Opinion

Dr. Tibbs, examined Plaintiff at the request of the Administration, and opined that Plaintiff was able to stand and walk unassisted, pick up coins, and write, but was "unable to lift, carry, or handle light objects." [R. 670.] Dr. Tibbs offered no further explanation as to what he meant by "light" objects. *Id*. The ALJ found that the portion of Dr. Tibbs's opinion concerning Plaintiff's inability "to lift, carry, or handle light objects is vague, but to the extent that it is consistent with a sedentary exertional level, it is persuasive." [R. 28.]

The ALJ here properly rejected Dr. Tibbs's statement for lack of detail as to what kinds of weight he believed Plaintiff was incapable of lifting, carrying, or handling. *See Marko L. v. Saul*, No. 16-cv-9723, 2021 WL 843427, at *6 (N.D. Ill. Mar. 5, 2021) (ALJ may reject opinion that does not describe details about a need for a particular postural modification/limitation); *Recha v. Saul*, 843 F. App'x 1, 5 (7th Cir. 2021) (merely noting "moderate" limitations in broad functional areas does not amount to a medical opinion articulating specific functional limitations); *Books v. Chater*,

17

91 F.3d 972, 978 (7th Cir. 1996) (where physician "failed to venture an opinion as to the extent of [plaintiff's] limitations or as to his residual capabilities, the evidentiary usefulness of his findings is slight, at best").

Although Plaintiff complains the ALJ did not discuss the factors of consistency or supportability, this is unavailing. To begin with, the ALJ found that Dr. Tibbs's opinion was consistent with a conclusion that Plaintiff could perform sedentary work, which was what the ALJ concluded after reviewing the entire record. [R. 28.] The ALJ thus found that to the extent Dr. Tibbs thought Plaintiff was unable to lift and carry ten pounds occasionally as required for sedentary work, his opinion was inconsistent with the other evidence. See 20 C.F.R. § 404.1520c(c)(2). As for supportability, Dr. Tibbs observed full bilateral grip strength, normal bilateral fine and gross manipulation, normal muscle tone and range of motion in the arms. [R. 26 (citing R. 669).] Therefore, Dr. Tibbs's own findings failed to support his opinion about Plaintiff being unable to lift, carry, or handle light objects (at least to the extent that "light" would imply a weight below ten pounds). *See* 20 C.F.R. § 404.1520c(c)(1). While even the Commissioner acknowledges "[t]he ALJ should have said more about Dr. Tibbs's opinion" [Dkt. 18, p. 14], the Court was still able to trace the ALJ's path of reasoning and understand the underpinnings of his decision in this regard. *Warnell*, 97 F.4th at 1054; *Morales*, 103 F.4th at 471. This failure of articulation was, at most, a harmless error; the Court is convinced the ALJ would reach the same result on remand. *Karr*, 989 F.3d at 513 ("if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required."). The Court will not remand based on the ALJ's consideration of Dr. Tibbs's opinion (either with respect to "light objects" or to the 45 degrees of flexion, discussed *supra*).

4.  **CONCLUSION**

For all the foregoing reasons, the Court finds the ALJ's decision is supported by substantial

evidence and contains the requisite adequate logical bridges between the evidence and his conclusions. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment [Dkt. 18] is DENIED and Defendant's motion for summary judgment [Dkt. 21] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

ENTERED: July 29, 2024 _____
Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge